The last case we orally heard this morning is 25-8003, United States v. Estrada, counsel for appellant. If you'd make your appearance and proceed, please. Good morning, your honors, and may it please the court. My name is Kathleen Shen, and I represent the appellate, Mr. Gabriel Estrada. A prosecutor cannot impeach a defendant's exculpatory story told for the first time at trial by cross-examining him about his failure to have told the story after receiving Miranda warnings. That comes from the Supreme Court's case, Doyle v. Ohio. That is, the prosecutor cannot suggest that the defendant was guilty because an innocent person would have presented the exculpatory story to the arresting officers. And that comes from this court's decision in Ward. But that's exactly what happened here. In the government's own words, it wanted the jury to ask itself, if Mr. Estrada truly believed this threesome fantasy with co-eds and didn't believe she was 13, why isn't he saying that to the police? And to be clear, this was not impeachment by prior inconsistent statement. The prosecutor's questions and argument were designed to suggest an inference of guilt from silence and not merely point out inconsistencies. To begin with, if you look at the examination, the prosecutor isn't pointing to specific statements from the interview that it says are inconsistent with his testimony. It's focusing on what he didn't say, nothing about what you didn't say to the police. And of course, it could both be true, as Mr. Estrada said, that Sammy Jo mentioned being 13 and that he wished he had turned around then. He should have turned around then. And that he didn't believe it at the time as he testified. And of course, there is a difference between being told something and believing something matters deeply in a case like this. It's a difference between guilt and innocence. And of course, as this court well knows, people often lie on the Internet. Even more obviously, Mr. Estrada never said anything during his police interview that contradicted his testimony that he was motivated by his desire to have a three-way sexual encounter. On the contrary, that testimony was obviously true and was extensively corroborated by his text messages. So this is not a case like Anderson v. Charles, where the defendant's testimony is contradicted by what he says to police. In the interview, did he not say that he knew she was 13 and that he kept going and he wished he should not have gone? Your Honor, I don't see a statement where he says that. Now, I read the interview many times. He says, didn't you know she was 13 or you received the message? He says, she mentioned it. And then later he said, initially, I thought she was 18. I'm going to pull out the language now. And later on, I should have turned around. So there's never a statement that he knew and believed it. The government or the police... Well, why would he have turned around if he didn't believe it? Because by that time, he had been arrested and he, during the interview, did in fact believe there was a real 13-year-old girl. And at that point, he regretted having gone on to the encounter at all. He thought he should have known better. He wished he had turned around. And he may have been really sorry that he had been talking sexually with what turned out to be a minor. Those expressions of remorse and regret are not admissions of what he believed during the text messages. I think it's natural that somebody would regret interacting sexually with a minor, whether or not he realized that at the time. I think that comes from both common sense. And this Court recognized the same principle in Goldsberry. And notably, the government during the cross-examination and the argument, they don't refer specifically to these statements. Again, if you look at the cross-examination, it's not pointing to statements. It's not saying this statement shows that you knew. It's saying you never said nothing about, you never say anything about this. Well, he spoke, the government is referring to things that he said. I mean, the whole point here with Doyle is silence. And you can't take advantage of silence. Well, if the government is alluding to and trying to draw a contrast between what he said in the interview and what he's saying on the stand, whether it was artfully done or not, that doesn't mean, that doesn't, that's not within the scope of Doyle. Your Honor, it is within the scope of Doyle if there is no inconsistency. And again, I think it's, in this case, there is no inconsistency. If you look at what Mr. Estrada says during the interview. Well, whether it's inconsistent or not is within the eye of the beholder. If the objective is to draw a contrast between statements that were made in the interview and statements that were made on the stand, and the government believes that it's trying to do inconsistent statements, then what position am I in to say that they weren't inconsistent? Your Honor, first, there's no inconsistency. And I think that requiring a true inconsistency as there was in Anderson v. Charles, where the defendant's statement to police could not be reconciled with what he said on the stand, where he said, I stole the car from one location, and later on the stand he says he stole it from another location. Those statements just both can't be true. But hit the pause button. Where in the Doyle doctrine, and give me a case, in the Doyle doctrine does it say that they have to be really inconsistent? Doyle is talking about silence. Of course. And this comes from this Court's line of cases, specifically Canterbury and Ward. And I think if you look at the facts of those cases. Well, in Canterbury, there were certain things that he didn't say, a defense that he later raised. That's not inconsistency. That is taking advantage of silence. Your Honor, in Canterbury, Mr. Canterbury, like Mr. Estrada, gave a statement to police. He never raised his right to remain silent, and he never refused to answer any questions. When he's asked, why did you turn up here to buy the silencer, he says, for protection. He never mentions that he's doing it because his friend Enrici offered to get him the silencer to repay a debt that Enrici owed. Those statements are different, but this Court says they're not inconsistent. And the reason they're not inconsistent, of course, they could both be true. It could be true that he wanted the silencer for protection, and it could be true that he also wanted it in order for Enrici to resolve this debt. And then if you look at Ward, again, Mr. Ward is arrested. He talks to police. He doesn't invoke his right to remain silent. He answers their questions. The police ask him, why did you shoot at these three people? He doesn't deny shooting them, and he says he did it because they were on a mission to find a woman named Brittany Bimbo. That's not what he testifies at trial. At trial, he says, yes, I participated in the shooting, and I don't know if he denies the Brittany Bimbo story at all. But he says, also, I was terrified of my co-defendant. I was afraid. And there, there is the same kind of parsing of whether there is an inconsistency or not. It could, of course, be true that Mr. Estrada was told by Sammy Jo that she was 13, and he didn't believe it. And, again, I understand that in a lot of contexts, people may not think that matters. If you're told something, you believe it. One implies the other. But, of course, when you're on trial for attempted enticement of a minor, whether you believe something you were told is incredibly important. And he never once makes any statement that he believed Sammy Jo was 13. I'm going to hit the pause button here. Are you telling me that your understanding of the Doyle doctrine is I have to discern whether, in fact, the statements between those two were consistent or not or inconsistent? Yes, Your Honor. In order to determine whether Anderson v. Charles applies? Yes, Your Honor, and that comes directly from Canterbury. Well, I read Canterbury. I didn't see anything like that in Canterbury. Canterbury was talking about silence. Doyle talks about silence. There was a defense undercover that was alluded to in Canterbury that was not talked about later, right? Your Honor, Mr. Estrada's defense was that he didn't believe these statements at the time, that at most he was reckless, and that is a defense he didn't share with the police at the time. I think it's on all fours with Ward and Canterbury. Well, that's silence. But that's the point. Yes. Canterbury is talking about silence, and that's what Doyle is talking about. What I hear you saying now is that you interpret Doyle to mean I have to discern whether, in fact, there was an inconsistency between what the government talked about in terms of the question, line of questions it talked about at trial, and what went on in the interview pre-trial. In other words, I have to discern whether there actually is an inconsistency. Is that what you're saying? I apologize, Your Honor. That's not what I meant to say. Okay. That's helpful. The point is that there is silence here. And there is silence because Mr. Estrada never said to the police, I believed that she was a 13-year-old at the time. He never told police his defense at trial, which is, I didn't really think she was 13. She was sent a picture of a 23-year-old. She was on an 18-plus website. People lie about their age all the time online. I talked to her. She sounded like a 23-year-old. I even pointed out to her, wow, you sound older. And then she says, oh, I was sick last week. And he says, LOL, okay. So he doesn't raise this defense about his doubts during his statements to the police. And I apologize, Your Honor. I shouldn't have focused on the Anderson thing. My point is, all of the things that the government is pointing out he didn't say to the police, that's a Doyle error. He didn't talk about what he was in his mind and what he believed at the time during his interview. And by focusing on that to discredit him and to argue he was guilty, the government committed exactly the same error that was committed in Ward and in Doyle. Counsel, can I leap you forward in the plain error analysis past error and plainness and talk about whether it affected Mr. Estrada's substantial rights? And in that analysis, we have to take a larger view of the evidence as a whole. But in the closing argument, as I understand it, the government framed his various statements by saying his testimony did not match what he said in his interview. So that's how they frame the argument. Why can't we interpret that argument to be about inconsistencies, not about silence? Your Honor, when the government says it's different, it just means that's not what he said. And we know that's what the government means because that's expressly what it says during the argument. He plays the statement, the video, and he says he never says anything about thinking she was 13. If he truly believed the threesome fantasy with coeds and he truly believed that she was 13, why isn't he saying that? And that is exactly, and I think expressly and cannot be understood as anything but an invitation to infer that if Mr. Estrada were innocent, he would have told his defense to the police. And that is exactly what Ward and Canterbury forbid. And, you know, just elaborating on why this affected Mr. Estrada's substantial rights, you know, contrary to what the government says in its brief, I think this was a close case or at minimum a case where the evidence was far from overwhelming. Of course, Mr. Estrada's credibility lay at the heart of his related intent-based and entrapment defenses. You know, and the evidence of Mr. Estrada's specific intent and whether he was entrapped was close. Of course, he encountered Sammy Jo on an adults-only website. The profile stated she was 19-year-old. She was depicted in two photographs as a 23-year-old woman. He spoke to her on the phone. She was voiced by a 23-year-old woman. And he actually observed at the time that she sounded older than her claim. And she says she'd been sick last week and he responds skeptically, LOL, okay. I think it's also really important in this case where entrapment is a defense that there's no evidence whatsoever that Mr. Estrada has ever previously or in any other context experienced, expressed, or sought out any kind of sexual interaction or expressed sexual interest in a minor. And given all these reasons that Mr. Estrada could have doubted that Sammy Jo actually was 13 at the time of their chat and the evidence that Mr. Estrada could have doubted her age until he was arrested and told that this is, in fact, a real girl, I think there's a reasonable likelihood that you can't be confident that but for this error, the jury would have acquitted him. And then for the similar reasons, I think it affects the, I think it seriously affects the fairness, integrity, and public reputation of judicial proceedings. It wasn't overwhelming and, of course, this is a constitutional error. And what about Mr. Estrada's statement in the interview where he said, quote, I feel like you guys know, unquote. Quote, initially I went into it thinking she was 18. Later on I was already on the way when she, you know, said that, unquote. How else does one read that in the context of an interview where they're talking about the fact that you believe she was 13? I mean, the reality is he said, you guys know. Well, that's what they know. They know that he believed she was 13. Your Honor, it's not a statement of belief. I think he clearly never says I believed it. He could very well, and I think under the circumstances where he's confronted with this being a real girl, he said, man, I should have known. But, of course, recklessness or even extreme recklessness with respect to age is not sufficient to support a conviction. What they need is that they need to show that he really believed and intended to entice a girl who was 13. And I think it's notable that the officers in the room and Mr. Estrada both understood that he never testified or he never made a statement of belief. The officer testifies. I never asked him what he believed at the time. They didn't ask that. That's not what he said. And for all those reasons, Your Honor, we'd ask you to vacate Mr. Estrada's conviction. And if Mr. Estrada did not believe it, why the apology letter? He wrote a letter apologizing for his conduct. Would he be doing that? Why would he do that? Yes, of course. I think many people would certainly feel very sorry for sexually interacting with a child, even if they didn't realize they were a child at the time. And, again, I think, you know, both because he might believe this child was actually hurt by his conduct, regardless of whether he believed it at the time. Again, I point this court to Goldsberry, and I just think it's a common sense notion. Here, he may have genuinely felt like he did something wrong and stupid and hurtful, and none of that is an admission that when he was texting with Sammy Joe and driving up to Wyoming, he did so specifically intending to entice a  I'd like to reserve the remaining time for rebuttal. Thank you. Good morning. May it please the Court. Good morning. Counsel. Seth Griswold appearing on behalf of the United States on this appeal, and I did represent the United States at the trial level as well. The United States is asking that the Court affirm the defendant's convictions because the United States did not plainly and unconstitutionally impeach the defendant with any potential partial silence, and the defendant did not adequately preserve his jury instruction argument for appeal, and even if he did, the jury instructions as a whole did accurately inform the jury of the law. Jumping into the argument that has been made here, Your Honors, the Court has hit it on the head. There's basically a two-step analysis here for a Doyle analysis. One was their partial silence, and then two, what was the manifest intention of the prosecutor and the natural and necessary consequence of any comments or questions on the jury. We don't get to step two in this case because there was no partial silence. All of the challenge statements or questions on cross-examination and statements during closing all go towards the age of Sammy Jo underscore F13, and that was the whole point of the interview. The defendant wants to couch it as what he believes, but it all goes to age, and even if it is what he believed about age, I was going to go to the quote you went to, Judge Holmes, and I would follow it up with that even after the, you know, said that, they then asked, should you have turned around? And he said, yeah, I should have. He clearly believed she was 13 with that comment, and he would not have said that if he did not believe it, so he was not silent on his belief. Yes, there's not a direct quote, I believe she was 13, but when do you ever have a direct quote on specific intent? Counsel, what was factually inconsistent about his statements to law enforcement versus his testimony? There's numerous inconsistencies, Your Honor, and it starts, and there was at least three things he then admitted to lying to officers about during the interview that then contradicted his testimony. One of the first lies is that he told Greenewalt he missed when she was 13. He admits that, no, he saw it, and apparently his new defense at the testimony during trial was not only he saw it, he was thinking all about it because he thought it was this kink that is completely inconsistent to the numerous lies he told both starting with the interview and then contradicted the testimony because the interview he at first starts trying to say, she's 18, I only think she's 18. Then he's confronted with the statement, she told you she was 13 in the text message. Oh, if she did, I must have missed that, another lie within the interview. Then eventually he admits, okay, she did say that. I saw it. I should have turned around. I didn't. Then that is completely contradictory to his testimony at trial where he then says, I saw it. I didn't believe it. I thought it was this kink. I just thought I was going to. So if that's true, then when he's testifying at trial, it was an opportunity for counsel questioning him to accredit his prior statements to law enforcement and then confront him on inconsistencies. Where, when we look at the record, do we see that tried and true technique of cross-examination happen? I believe it is replete throughout the record, Your Honor. And the defense to make it appear like there was a Doyle error in this case has to very selectively quote the statements, never said, didn't say. But when you look at the quotes in their entirety, and I don't have time to go through every one, but one, for example, on page 495 of Volume 3, this is the comment challenged, in your interview, you never mentioned that you thought she was a college girl, did you? Estrada, no. Prosecutor, all right. You didn't say anything about thinking that the person might have thought it was a fantasy or a kink to pretend to be a 13-year-old, do you? No. Once confronted with age, you admitted that you knew she was 13, but only once you were halfway, right? And then he doesn't fully admit that. Why aren't those first two questions that start, you never mentioned that you thought? In the interview, you don't say anything, and then you don't say anything about thinking again in the next question. Why don't those align almost perfectly with what this Court just analyzed in the cases key in Ward and said that is attempting to attack his credibility by what he's not, or what he didn't say to law enforcement? In other words, his silence. First, because there is no silence, as I said, because he had spoken about these. And then I... But that's not what our cases say. I mean, when you look at silence, it's not just he either makes a statement or he doesn't. It is, does he make specific statements when he talks to law enforcement? Does he address certain topics? And in his law enforcement interview, does he address the topic of his belief that these were college girls or the kink or anything? So, yes, Your Honor. It is about the topics, whether there's partial silence on a topic or subject matter. And while he did not specifically talk about fantasy or kink, he was speaking about the topic and subject matter about the age and what he believed as previously discussed. And that is directly contradictory to him thinking it's a 19-year-old college girl and that it was a kink she said she was 13. And that is what the prosecutor I attempted to then point out. And while he didn't admit it, that was the manifest intention when trying to confront him with the inconsistencies between those two. And I'd point the court to Anderson when it says that two inconsistent descriptions of events may be said to involve silence insofar as it admits facts included in the other version. And that's what we have here. The interview is somewhat silent on kink and college girls. But that's because it is inconsistent for him to admit eventually that he knew she was 13 and then to testify contrarily at the trial that he thought it was a kink. How do you square this argument with Ward? I mean, in Ward we specifically talk about this line of questioning gives rise to an inference that the defendant's guilty because an innocent person would have presented their entrapment theory to the arresting officers. Why is that exactly on all fours with what we're talking about here? I don't believe so, Your Honor. Why? Well, because Ward is distinguishable. In Ward he talked about participating in a violent shooting with another individual, but he was completely silent on the issue of the duress and participation of fears of his own safety. So then the prosecutor was commenting on silence by saying didn't say because not true. And then this is a brand-new story told for the first time. Those were comments on silence because there was silence on that particular issue in Ward. Well, there was silence on fantasy and kinks, right? And that's what you're raising in his trial testimony. But that was contradictory to his testimony or his interview when he then at first tries to just say I didn't even see she said she was 13. Okay, if she did say it, I missed it. And then eventually saying that she did say it. I first thought she was 18. Once she said it, I should have turned around. All those are directly contradictory to and talking on the subject of that because the whole point of him saying it was a kink is him saying he believed it was a 19-year-old who was saying she was 13 as a kink. And at first he's trying to deny that she even said she was 13 during the interview. So he is speaking on that and it's inconsistent to then say during his testimony at trial, yes, she said she was 13 and I saw it, but I thought it was a kink. He admitted to lying to officers when he said he didn't see that she said she was 13 at first. And what is the limiting principle on this concept of topics that you're talking about? I mean, if I say something about Sam Jay's age in the context of the interview, have I then spoken enough so that there is nothing else that I could say? There is no potential for silence in that interview if I mention her age at all? There's no bright-line rule, I don't believe, Your Honor. And then what is very important in this case is then we are on plain air. And then it has to be clear and obvious. Yeah, it does. And we're going to get to that. But the point is to understand the legal construct in which we're dealing with. And that's why Judge Federico's comment about, well, you know, this isn't the classic situation where these are the statements you made and, therefore, this is what you're saying now. And, therefore, they're inconsistent. I mean, what you said is you did not say anything about X. Well, why isn't that comment on the fact they didn't say anything about X, which is silence? So, the prosecutor, I do believe I circled back the unchallenging with the inconsistent statement that on this particular one that we're talking about, once confronted with age, you admitted that you knew she was 13. I did contradict because— Well, you may have circled back to it. But I think part of the challenge here is you're not even conceded there's any error. And, you know, we can talk about prejudice. But whether you circle back to it in your examination, how does that cure whether you have already engaged in questioning where the clear inference that you're laying out for the jury is he didn't say this to law enforcement, therefore, you can't believe his testimony? I just don't see how you get around that. Respectfully, that wasn't my intent and not what I meant to say. It's not saying he never said that, so you know it's not true. He never said that. It doesn't matter what the questioner's intent is. When we read the record, what other inference was the jury to pick up on? There is no other, is there? Well, first, the question is the manifest intention of the prosecutor. That is what we are—the standard we are under. And then also, using never is a natural language to compare two statements. The defense attorney, and she doesn't do anything wrong, but on page 1 of the reply brief, even does it saying that when you compare the two statements, Greenewalt never gave testimony. Rather, what Greenewalt testified was that there was two people like him. And I only bring that up to show that that is how people compare two statements. When you're discussing one statement and then another that are contradictory, it is natural to say you never said this because you said it otherwise. And that was what I was doing here by using the words never did or didn't. It was because it was showing out the inconsistency by then what he did say, contradictory to what he did say at the testimony in trial. Well, you were beginning to talk about prong two and clear or obvious error. Let's assume for the moment this is error. What is your best case for us to take the position that this is not clear or obvious error under our existing case? Assuming if there was any error, then going to the plain error analysis, it was not clear and obvious. And what I would encourage the court to do is compare this to the White case, which was recently. It's an unpublished decision, but from the 10th Circuit in September of 2025. And in that case, the defendant even did partially invoke silence as it related to a gun. He said he wouldn't answer any questions about a gun. And in that case, the court said this court said that the defendant also asserted an affirmative defense dress defense for the first time at trial. But different than the defendants in Ward and Canterbury, Mr. White also gave inconsistent stories during his post arrest interview at trial. And then when comparing all that in the statements of the prosecutor found that this case falls in the middle of our prior cases, some finding Doyle error, some not. And for that reason, it presents a close call. In light of that, Mr. White has not established plain error. And when you compare that, I think this case is even more clear than white because. Assuming it was wrong for me to say never and did it, then I still the prosecutor was still circling back and constantly tying it to the inconsistencies under the umbrella of inconsistencies. And there was no partial silence. He certainly did not partially invoke his right to remain silent. And if there was any. Did he have to? The defendant in Canterbury, did he have to? No, he does not have to. I only bring that up to show the scale of where we are. And in White and also in other cases in the circuit they talk about, it's not always even clear when they do partially invoke their right to remain silent. And then clearly, as stated in Canterbury and Ward, they do not have to if they are partially silent on topic. The prosecutor clearly cannot use that to then infer guilt from partial silence. But in this case, there was no silence. If there was any silence is certainly a close call. And it is not clear and obvious. And because of that, if we do even get to the plain error analysis there, it was not. It is ambiguous. And there was no plain error. In his law enforcement interview, did he ever talk about college girls? No. So how is it a close call as to silence? So he didn't talk about college girls because at first he does try and say that she was 18. But then by the end, he does admit, okay, yeah, she said she was 13. I should have turned around. And I didn't. And then he even writes an apology letter saying what I did was wrong. And by admitting then that she was 13, writing an apology letter that is completely inconsistent with believing it's this 19-year-old college co-ed. In the closing argument, you argued to the jury, first he says he thought he was going to have a threesome with two college girls to yesterday, referring to his testimony at trial. There was never any mention of college girls in the interview. Why isn't that, again, a clear inference that you're asking the jury to draw, that had he thought that he was going to see college girls, he would have told the law enforcement investigators during his interview? So I have five seconds if I may go over and answer the question. Please do. This is, again, where I think the defense has to partially narrow and only point out that quote to make it look like error. But when it is looked at in the context of the complete transcript, it is clearly not. Because the full quote is, here you can see the story start changing as he starts realizing how much evidence there is against him, and then acknowledges she did mention it, it being that she was 13. And then the challenge quote, if he truly believed this threesome fantasy with co-eds, but he didn't really believe she was 13, why isn't he saying that? Instead, he's adjusting his story as more as he's confronted with more evidence. Because by saying that, what I'm really pointing out is his interview wasn't even consistent with itself. He was continually lying and adjusting his story as he was confronted with more evidence against him. And then even further, his testimony was inconsistent with his interview. So I did use the word never, but it was the manifest intent to highlight the inconsistencies, and that would have been the natural and necessary effect on the jury. And so for those reasons, I would ask that this court affirm the defendant's convictions. Thank you, counsel. Your Honor, I'll just make a few quick points. First, any inconsistencies with respect to the timing he received the text wouldn't justify impeachment on other grounds. That's clearly explained in Ward, the footnote 1 of Ward. This case really is just like Canterbury, just like those cases. He told police he did something, but he didn't explain why he did it or fully explain it or what he was thinking. And that is exactly what happened here. I think it's on all fours. The government, of course, could make these arguments it's now making about what Mr. Estrada's statements meant. It could argue that when you look at this statement, what he's really saying is he knew. But what it couldn't do is say, he never told you this before, therefore it's a lie. And then finally, you know, I just want this court to look at if you look at the context of the colloquy in Volume 3, 495 to 496, it's several numerous questions in a row all about silence with one exception. So I don't think this has been selectively misquoted. I think when you read this, the only way to interpret the questions and the argument together is they want you or the government wanted the jury to infer his guilt from his silence. And for that reason, we ask for a new trial. Thank you. Thank you, counsel. Case is submitted.